UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEMARIO WADE-BEY #372942,

        Petitioner,                       Hon. Robert J. Jonker

v.                                  Case No. 1:19-CV-522

RANDEE REWERTS,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Wade-Bey's petition for writ of habeas corpus.   In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Wade-Bey's petition be denied.

## BACKGROUND

As a result of events that occurred on or about October 14, 2015, Petitioner was charged with second-degree home invasion.   Several individuals testified at Petitioner's jury trial.   The relevant portions of their testimony are summarized below.

1

**Jennifer Vanderlip**

At approximately 8:30 a.m. on October 14, 2015, Vanderlip left her home to drive her daughter to school. (ECF No. 14-4, Trial Transcript, PageID.480-81). When Vanderlip returned approximately 25 minutes later, she observed a vehicle she did not recognize parked in her driveway "pretty close to [the] garage." (*Id.*, PageID.491-82). The vehicle in question was a gold colored Nissan Quest with no license plate and damage to the left bumper. (*Id.*, PageID.483-85). Vanderlip was "startled" seeing a strange vehicle in her driveway parked so close to her garage. (*Id.*, PageID.483).

After initially driving past her house, Vanderlip returned home and parked next to Quest. (*Id.*, PageID.484). Before getting out of her car, Vanderlip telephoned her sister, and then attempted to telephone the police. (*Id.*, PageID.486). Before she could complete this latter call, however, Petitioner "came out from behind [Vanderlip's] house," startling her and causing her to drop her phone. (*Id.*, PageID.486-87).

When Vanderlip asked Petitioner "what he was doing," Petitioner pointed at her roof and said he was "working on a house," but "it must be down over there," gesturing toward a neighbor's house. (*Id.* at 165). Petitioner then got into his vehicle, and he drove toward the neighbor's house he had pointed at, but instead of stopping simply sped away. (*Id.*, PageID.487-89).

Upon approaching the rear of her house, Vanderlip immediately observed several "unusual" things.  (*Id*. at 167-68).   A blanket that normally hung inside her bedroom window was sitting outside.  (*Id.,* PageID.489-90).   A small cinder block, which normally borders the driveway, was sitting "right underneath [the bedroom] window."  (*Id.*, PageID.491-92).   The screen was removed from the bedroom window and the window's hand crank was "snapped in half."  (*Id.*, PageID.492).

When Deputy Scott Foster arrived, Vanderlip inspected the interior of her home and discovered that various electronic devices in her bedroom had been unplugged and moved "closer to the window."  (*Id.*, PageID.493-94).   Vanderlip also discovered leaves in her living room that had not been present previously.  (*Id.*, PageID.494).   Vanderlip was subsequently shown a photographic lineup from which she selected Petitioner as the man she encountered at her house on the morning in question.  (*Id.*, PageID.495-97).

### Scott Foster

As of October 14, 2015, Foster was employed as a Muskegon County Deputy Sheriff.  (ECF No. 14-4, Trial Transcript, PageID.539).   That morning, Foster was dispatched to Jennifer Vanderlip's residence to investigate a breaking and entering.  (*Id.*, PageID.539-40).   An examination of the rear of the house revealed an open window beneath which was a blanket and cinder block.  (*Id.*, PageID.542).   Foster also observed that the handle used to the open window was "broken off."  (*Id.*, PageID.550).

3

<u>Matt **Schultz**</u>

As of October 14, 2015, Schultz was employed as a Detective for the Muskegon County Sheriff's Department.    (ECF No. 14-5, Trial Transcript, PageID.580).  Schultz was dispatched that morning to assist in the investigation of the breaking and entering of Jennifer Vanderlip's home.    (*Id.*, PageID.580-81).    Specifically, Schultz began searching computer databases for previous incidents involving black males and Quest minivans.    (*Id.*, PageID.582-84).    This search revealed a gold Quest minivan that was registered to Petitioner's mother and associated with Petitioner.    (*Id.*, PageID.584, 662).

Schultz went to Petitioner's residence and, upon arrival, observed a gold Nissan Quest without a license plate and a dent on the driver's side.    (*Id.*, PageID.584-86).    Schultz then contacted another detective to compile a photo line-up containing Petitioner's photo.    (*Id.*, PageID.587-88).    Later that day, Schultz showed this line-up to Jennifer Vanderlip who selected Petitioner as the man she encountered in her driveway earlier that morning.    (*Id.*, PageID.589-90).    The following day, Schultz secured a warrant authorizing him to place a GPS tracking device on the Quest minivan he observed outside of Petitioner's residence.    (*Id.*, PageID.591-92).    This device was placed on the minivan in question the following day.    (*Id.*, PageID.591).

4

At approximately 3:00 a.m. on October 20, 2015, Schultz was contacted by Detective Tim Lavigne "due to suspicious activity on the [GPS] tracker." (*Id.*, PageID.591-97). Schultz drove past the location where the minivan was then located. (*Id.*, PageID.597-99). As Schultz drove by, he observed "the van in the driveway and it had three doors, two doors and the back hatch were open." (*Id.*, PageID.599-600). Schultz continued past this location and he and other officers began "a loose surveillance" of the minivan. (*Id.*). Soon thereafter, one of the other officers effected a traffic stop on the minivan in which various items of stolen property were located. (*Id.*, PageID.600-04). Further investigation of the GPS tracking device data revealed that the minivan in question had been in the general vicinity of other "suspected break-ins." (*Id.*, PageID.604-06).

### **David Paseka**

As of October 20, 2015, Paseka was employed as a Muskegon County Deputy Sheriff. (ECF No. 14-5, Trial Transcript, PageID.622). At approximately 4:30 a.m. that morning, Detective Lavigne informed Paseka that the vehicle involved in the Vanderlip breaking and entering was believed to then be located in a particular area. (*Id.*, PageID.623).

In response, Paseka traveled to the area in question to investigate whether there was any evidence of breaking and entering activity. (*Id.*, PageID.623-24). Specifically, Paseka traveled to Gary's Guns where he observed "fresh paint chips on the ground by the door that matched the door and doorframe," suggesting that

5

somebody had attempted to unlawfully enter.   (*Id.*, PageID.624-25).   Investigation of a second nearby business revealed evidence of an attempted breaking and entering. (*Id.*, PageID.625).   Paseka was also informed that "there could be possibly more [attempts at breaking and entering] in the Norton Shores area."   (*Id.*, PageID.626).

Paseka was then instructed to effect a traffic stop on a gold Nissan Quest minivan without a license plate.   (*Id.*, PageID.625-26).   Paseka was provided, via GPS data, the precise location of this vehicle.   (*Id.*, PageID.627).   The minivan stopped when directed to do so, but as soon as the vehicle stopped moving, Petitioner, who had been driving, fled the vehicle on foot.   (*Id.*, PageID.627-29).   Paseka captured Petitioner after a brief chase.   (*Id.*, PageID.629-30).

### **Early Harley**

As of October 20, 2015, Harley owned a business in Norton Shores.   (ECF No. 14-5, Trial Transcript, PageID.634-35).   Early that morning, after receiving a telephone call, Harley traveled to his business where he discovered that somebody had attempted to forcibly enter his business.   (*Id.*, PageID.635-47).

### **Deborah Loyselle**

As of October 20, 2015, Loyselle resided in Norton Shores.   (ECF No. 14-5, Trial Transcript, PageID.645).   When Loyselle returned home that afternoon, she realized that somebody had "busted open" her shed and stolen several items including her snowblower, lawn mower, power washer, and chop saw.   (*Id.*, PageID.645-46).

Several of these items were subsequently recovered by the police.    (*Id.*, PageID.646-47).

### **Daniel Gibbs**

As of October 20, 2015, Gibbs was employed as an Officer with the Norton Shores Police Department.   (ECF No. 14-5, Trial Transcript, PageID.638-39).   On this date, Gibbs investigated the theft of property from Deborah Loyselle's shed. (*Id.*, PageID.639-40, 45).   An examination of Loyselle's shed revealed evidence of forced entry.   (*Id.*, PageID.640-41).

### **Kyle Neher**

As of October 20, 2015, Neher was employed as a Detective with the Norton Shores Police Department.   (ECF No. 14-5, Trial Transcript, PageID.649).   On this date, Neher assisted in the recovery of several of the items stolen from Deborah Loyselle's shed.   (*Id.*, PageID.649-52).   Neher also participated in a search of a gold Nissan Quest minivan without a license plate.   (*Id.*, PageID.652).   This search revealed, in part, a chainsaw that had been stolen from a house in Deborah Loyselle's neighborhood.   (*Id.*, PageID.652-54).

### **Demario Wade-Bey**

With respect to the events of October 14, 2015, Petitioner asserted that he was not in the vicinity of Jennifer Vanderlip's residence and did not break into her home. (ECF No. 14-5, Trial Transcript, PageID.680, 683).   Petitioner only drove his mother's minivan "once or twice maybe," because she "won't let [him] drive it."   (*Id.*,

PageID.681).   Several other family members, however, were allowed to drive the minivan.   (*Id.*, PageID.682).   Of these other family members, Petitioner's brother Timothy drove the minivan more than anybody else.   (*Id.*).   Petitioner asserted that he and his brother Timothy have been mistaken for each other previously.   (*Id.*, PageID.682-84).   With respect to the events of October 20, 2015, Petitioner did not remember driving his mother's minivan or running away from the police.   (*Id.*, PageID.687-88, 694-95).

### Tim Lavigne

Lavigne, a Detective with the Muskegon County Sheriff's Department, testified about the database the County maintains to record all vehicle-related incidents.   (ECF No. 14-5, Trial Transcript, PageID.697-700, 718).   A search of this database revealed no entries involving Petitioner's brother, Timothy, related to the Nissan Quest minivan owned by Petitioner's mother.   (*Id.*, PageID.719).   But a search revealed three separate incidents involving Petitioner and his mother's minivan.   (*Id.*, PageID.718-19).

Following the presentation of evidence, the jury found Petitioner guilty of second-degree home invasion.   (ECF No. 14-6, Trial Transcript, PageID.783). Petitioner was sentenced, as a fourth habitual offender, to serve 9-27 years in prison. (ECF No. 14-7, Sentencing Transcript, PageID.799-800).

Petitioner appealed his convictions in the Michigan Court of Appeals asserting the following claims:

I.    There was insufficient evidence of identity to support the verdict in this matter.

II.   The trial court interfered with defendant's right to present a defense when it conditioned the testimony of Detective Schultz regarding his brother's appearance on defendant taking the stand and waiving his Fifth Amendment right to be silent.

III.  Defendant is entitled to a new trial as he was denied effective assistance of counsel.

IV.   Defendant is entitled to be resentenced according to properly scored guidelines, and with proper consideration of mitigating circumstances.

The Michigan Court of Appeals affirmed Petitioner's convictions.   *People v. Wade-Bey*, 2018 WL 384601 (Mich. Ct. App., Jan. 11, 2018).   Raising the same four issues, as well as an additional claim of "jury tampering," Petitioner unsuccessfully moved in the Michigan Supreme Court for leave to appeal.   *People v. Wade-Bey*, 924 N.W.2d 561 (Mich. 2019).   Petitioner now moves for relief asserting the following claims:

I.    Insufficient evidence presented to actually support a verdict of guilt.

II.   Interference with Petitioner's rights to present a defense.

III.  Structural denial of effective assistance of counsel.

IV.   Disproportionate sentence.

## STANDARD OF REVIEW

Wade-Bey's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254.   The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

(d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."   *Bell v. Cone*, 535 U.S. 685, 693 (2002). As the Supreme Court recently emphasized, this standard is "intentionally difficult to meet."   *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (internal quotation omitted).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives

at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).   A writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411.   Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable.   *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12.

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary."   *Ayers*, 623 F.3d at 308.   Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."   *Ibid.*

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy either subsection therein.   This requirement, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"   *Harrington v. Richter*, 562 U.S. 86, 100 (2011).   Instead, if a state court rejects a federal claim, a federal habeas court "*must presume*

that the federal claim was adjudicated on the merits."  *Johnson v. Williams*, 568 U.S. 289, 301 (2013).   If this presumption is overcome, however, the Court reviews the matter de novo.   *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

## ANALYSIS

### I.   Sufficiency of the Evidence

Petitioner was convicted of second-degree home invasion.   Under Michigan law, the elements of second-degree home invasion are: (1) breaking and entering a dwelling, (2) with the intent to commit a larceny.   *See People v. Schwartz*, 2013 WL 331583 at *2 (Mich. Ct. App., Jan. 29, 2013) (citing Mich. Comp. Laws § 750.110a(3)). Moreover, identity is an element of every criminal offense under Michigan law.   *See People v. Yost*, 749 N.W.2d 753, 767 (Mich. Ct. App. 2008).   Petitioner argues that he is entitled to relief because his conviction is not supported by sufficient evidence.

Claims challenging the sufficiency of the evidence are governed by the standard articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979), pursuant to which it must be determined whether viewing the evidence in the light most favorable to the prosecution and according the benefit of all reasonable inferences to the prosecution, any rational trier of fact could have found Petitioner guilty beyond a reasonable doubt.   *See O'Hara v. Brigano*, 499 F.3d 492, 499 (6th Cir. 2007) (citing *Jackson*, 443 U.S. at 319-26).

When determining whether there exists sufficient evidence to support a conviction the Court may not weigh the evidence, assess the credibility of the witnesses, or substitute its judgment for that of the jury. *See United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006). Furthermore, where the record supports conflicting inferences the Court "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *O'Hara*, 499 F.3d at 499 (quoting *Jackson*, 443 U.S. at 326).

Petitioner advances several arguments, none of which are persuasive. Petitioner first argues that Jennifer Vanderlip "misidentified" Petitioner as the man she encountered at her home on the morning in question. Petitioner next argues that he is entitled to relief because none of Vanderlip's belongings were ever discovered in his possession. Finally, Petitioner asserts that his conviction is unconstitutional because the prosecution failed to present "corroboration" evidence such as DNA, fingerprints, or shoeprints.

Vanderlip testified that she had a brief face-to-face encounter with a man at her house on the morning in question. Later that same day, Vanderlip was shown a photographic lineup from which she identified Petitioner as the man in question. At trial, Vanderlip again identified Petitioner as the man she encountered at her home on the morning in question. Under Michigan law, first-hand eyewitness testimony is sufficient to establish identity and support a conviction. *See, e.g., People v. Davis*,

617 N.W.2d 381, 383 (Mich. Ct. App. 2000).   Moreover, witness credibility is a matter for the jury to resolve.   *Ibid.*   Taken in a light most favorable to the prosecution, the evidence was sufficient to establish that Petitioner was the man Vanderlip encountered in her driveway on the morning of October 14, 2015.   This argument is, therefore, rejected.

Petitioner's argument that he is entitled to relief because none of Vanderlip's belongings were discovered in his possession or that the prosecution did not present corroborative physical evidence are equally unavailing.   As noted above, second-degree breaking and entering requires only: (1) breaking and entering a dwelling, (2) with the intent to commit a larceny.   There is no requirement that the larceny be completed or that the defendant be discovered in possession of any stolen property. The evidence presented at trial was more than sufficient for a reasonable juror to conclude that Petitioner unlawfully entered Vanderlip's home with the intent to commit larceny therein.   That this evidence was largely circumstantial is of no consequence as "circumstantial evidence is entitled to the same weight as direct evidence," and "circumstantial evidence alone is sufficient to sustain a conviction." *United States v. Mack*, 808 F.3d 1074, 1080 (6th Cir. 2015).

The Michigan Court of Appeals rejected Petitioner's sufficiency of the evidence claim.   *Wade-Bey*, 2018 WL 384601 at *1-2.   In light of the evidence and relevant authority, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law.   Furthermore, this

14

decision was not based on an unreasonable determination of the facts in light of the evidence presented.   Accordingly, this claim raises no issue upon which habeas relief may be granted.

## II.    Right to Present a Defense

At trial, Petitioner's theory was that "if [Jennifer Vanderlip] saw who she said she saw, and it wasn't [Petitioner], then it was obviously [Petitioner's brother] Timothy." (ECF No. 14-5, Trial Transcript, PageID.663).   In support of this theory, Petitioner questioned Detective Matt Schultz in his case-in-chief.   On direct questioning, Schultz expressed his opinion that Petitioner and his two brothers "all have similar characteristics" and "look alike." (*Id.*, PageID.658-60).   Schultz also asserted that he was nevertheless able to discern each brother from the others.   (*Id.*, PageID.660).   On cross-examination, Schultz noted that there did not exist any evidence suggesting that Petitioner's brother, Timothy, was involved in the Vanderlip home invasion.   (*Id.*, PageID.661).

The trial judge initially allowed Petitioner to question Schultz concerning the alleged similarities in appearance between Petitioner and his brother, Timothy. (*Id.*, PageID.658-63).   After excusing the jury, however, the judge expressed doubts about the admissibility of Schultz's testimony.   Specifically, the judge stated, "this whole line of questioning, I think begs the question about who is going to testify that Timothy was in the area or anything like that?" (*Id.*, PageID.663).   The judge was very clear that Petitioner "doesn't have any burden of proof," but was also concerned

15

that, absent evidence that Timothy was in the vicinity of the Vanderlip residence on the day in question or otherwise involved in the incident at her home, Petitioner was simply inviting "the jurors to do too much rank speculation."  (*Id.*, PageID.663-68). Accordingly, the judge granted the prosecution's motion to strike the testimony by Detective Schultz elicited in Petitioner's case-in-chief.  (*Id.*, PageID.668).   In so doing, the judge stated:

> All right. The Court grants the prosecutor's motion to strike the testimony about similarities between the defendant and his brother Timothy.   The Court already addressed the defendant's right to do some of this stuff but, it invites the jurors to just do too much rank speculation.   He has some resemblance to his brother and so – there's nothing at the end of that sentence.   Now, I need to be careful.   The defendant has no burden of proof here but the defendant does have to present evidence from which jurors could make conclusions.   So, [Petitioner] might say, well what might that evidence be.   Well, maybe mom would say Timothy was in the area and he drove my van sometimes.   We don't have that.   If [Petitioner] wants to testify and put that into play, then maybe that makes this inquiry relevant.   But, at this point, the evidence just is insufficient to create for the jurors any basis from which they can make conclusions.   I mean, let's be silly for a minute, [Petitioner]. You could ask Detective Schultz, does Mr. Wade-Bey look like Mr. Jones, Mr. X, the person who works at the restaurant, the person who works at the gas station and that's about where we are with the brother.   He has resemblance to his brother, okay.   We have nothing else.

(*Id.*, PageID.668-69).

In response, Petitioner's counsel requested that, rather than bringing the jury back in and striking Schultz's testimony on the record, that he first be permitted an opportunity to consult with Petitioner to determine whether he wanted to testify, which would likely obviate the need to strike Schultz's testimony.   (*Id.*, PageID.669-

16

70).   The judge agreed, and following a brief recess, the judge questioned Petitioner regarding his decision whether to testify.   (*Id.*, PageID.670-71).   Despite his counsel's advice that he should not testify, Petitioner stated that he wanted to testify and "present a defense for myself."   (*Id.*, PageID.671-72).   In response, the judge informed Petitioner in detail of the ramifications if he chose to testify.   (*Id.*, PageID.672-74).   Despite the judge's warnings, Petitioner chose to testify.   (*Id.*, PageID.674).

Petitioner now argues that he is entitled to habeas relief because the trial judge "interfered with his right to present a defense when it conditioned the testimony of Detective Schultz regarding his brother's appearance on [Petitioner] taking the stand and waiving his Fifth Amendment right to remain silent."   (ECF No. 2-1, PageID.90-91).

The United States Constitution guarantees to criminal defendants "a meaningful opportunity to present a complete defense."   *United States v. Geisen*, 612 F.3d 471, 495 (6th Cir. 2010) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). This right is not without limits, however, and may be reasonably restricted "to accommodate other legitimate interests in the criminal trial process."   *United States v. Scheffer*, 523 U.S. 303, 308 (1998); *see also*, *Taylor v. Illinois*, 484 U.S. 400, 412-13 (1988) ("[t]he Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system"); *Couturier v. Vasbinder*, 385 Fed. Appx. 509, 516 (6th Cir., July 13, 2010) ("the right to present a complete defense

17

is not an unlimited right to ride roughshod over reasonable evidentiary restrictions")

(citation omitted).    As the Supreme Court has recognized, "well-established rules of

evidence permit trial judges to exclude evidence if its probative value is outweighed

by certain other factors such as unfair prejudice, confusion of the issues, or potential

to mislead the jury."    *Holmes v. South Carolina*, 547 U.S. 319, 326-27 (2006); *see also*,

*Geisen*, 612 F.3d at 495.

Accordingly, criminal defendants "must comply with established rules of

procedure and evidence designed to assure both fairness and reliability in the

ascertainment of guilt and innocence."    *Wynne v. Renico*, 606 F.3d 867, 870 (6th Cir.

2010) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)).    The application

of such rules does not abridge an accused's right to present a defense so long as they

are not "arbitrary or disproportionate to the purposes they are designed to serve."

*Renico*, 606 F.3d at 870 (quoting *Scheffer*, 523 U.S. at 308).    As is well recognized,

trial judges must make many evidentiary rulings during the course of a trial and "the

Constitution leaves to the judges who must make these decisions wide latitude to

exclude evidence that is repetitive, only marginally relevant or poses an undue risk

of harassment, prejudice, or confusion of the issues."    *Crane*, 476 U.S. at 689-90.

An evidentiary ruling violates a defendant's right to present a defense only

where "the exclusion of evidence seriously undermined fundamental elements of the

defendant's defense against the crime charged."    *Miskel v. Karnes*, 397 F.3d 446, 455

(6th Cir. 2005) (quoting *Scheffer*, 523 U.S. at 315-17).    Accordingly, whether the

exclusion of the evidence in question violated the defendant's right to present a defense "depends upon whether the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that otherwise did not exist." *United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006).

Petitioner's claim, in effect, raises two related issues.   First, was the decision by the trial judge to strike the testimony at issue, in the absence of any evidence connecting Petitioner's brother, Timothy, to the crime in question, improper. Second, did this decision improperly compel Petitioner to testify.

Taking the former question first, the constitutional right to present a defense is not a license for criminal defendants to invite or encourage juries to engage in unfounded speculation.   *See, e.g., Simonson v. Hepp*, 549 F.3d 1101, 1106-07 (7th Cir. 2008) ("[p]reventing speculation is undoubtedly a legitimate state interest, and excluding evidence in the name of that interest did not abridge [defendant's] right to present a defense"); *Wallace v. Rivard*, 2016 WL 3055617 at *5-7 (E.D. Mich., May 31, 2016) (same).   Thus, the trial judge's decision regarding the admissibility of Detective Schultz's testimony did not violate Petitioner's right to present a defense.

As for Petitioner's decision to testify so as to preclude the exclusion of Schultz's testimony, such was neither compelled nor the result of an improper ruling by the trial court.   The trial judge's decision that Schultz's testimony would be admissible only if Petitioner could also present evidence somehow connecting his brother to the events in question did not violate Petitioner's rights.   Petitioner could have overcome

this hurdle in a variety of ways.   As the Michigan Court of Appeals recognized, Petitioner "could have chosen to present some other witness to testify that [his] brother was in the area on the date of the crime."   *Wade-Bey*, 2018 WL 384601 at *3. Petitioner made a knowing and informed decision to testify.   That Petitioner's decision was a tactical response to a proper evidentiary ruling does not transform free will into compulsion.

The Michigan Court of Appeals rejected this claim.   *Id.* at *2-3.   In light of the evidence and relevant authority, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law.   Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.   Accordingly, this claim raises no issue upon which habeas relief may be granted.

## III.   Effective Assistance of Counsel

Petitioner asserts that he is entitled to relief due to "the structural denial of (effective) assistance of counsel."   (ECF No. 1, PageID.9).   The Court interprets this statement as asserting two distinct claims each of which is examined below.

A.     *Strickland* - Ineffective Assistance of Counsel

Petitioner argues that he is entitled to relief because his trial attorney failed to provide constitutionally adequate representation in two ways: (1) by failing to question at trial Petitioner's alibi witness; and (2) by failing to object to improper comments by the prosecutor during closing argument.

20

To establish ineffective assistance of counsel, Petitioner must show both deficient performance by his counsel and prejudice resulting therefrom.    *See Premo v. Moore*, 562 U.S. 115, 121 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).   To establish deficient performance, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness."    *Premo*, 562 U.S. at 121 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).    A court considering a claim of ineffective assistance must apply a "strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance."    *Premo*, 562 U.S. at 121 (quoting *Strickland*, 466 U.S. at 689). Petitioner's burden is to show that "counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Premo*, 562 U.S. at 121-22 (quoting *Strickland*, 466 U.S. at 687).

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance.    Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."    *Premo*, 562 U.S. at 122 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).    The issue is whether counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."    *Premo*, 562 U.S. at 122 (quoting *Strickland*, 466 U.S. at 690).    This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly

ineffective that defeat was snatched from the hands of probable victory." *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).

As the Supreme Court has made clear, even when reviewing an ineffective assistance of counsel claim *de novo*, "the standard for judging counsel's representation is a most deferential one." *Premo*, 562 U.S. at 122. Likewise, the standard by which petitions for habeas relief are judged is "highly deferential." Thus, when reviewing, in the context of a habeas petition, whether a state court unreasonably applied the *Strickland* standard, review is "doubly" deferential. *Ibid.* (citations omitted). As the *Premo* Court concluded:

> The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating reasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 122-23 (internal citations omitted).

1.    Alibi Witness

Petitioner asserts that his trial attorney was deficient because he failed to elicit testimony at trail from an alibi witness. While Petitioner presented this claim to the Michigan Court of Appeals on direct appeal, he failed to support it with any evidence as to the identity of this alleged alibi witness or what testimony he or she would have provided. *Wade-Bey*, 2018 WL 384601 at *5. Because Petitioner failed to establish that he had suffered prejudice as a result of his attorney's alleged deficient

performance, the Michigan Court of Appeals rejected this claim.  *Ibid.*  This determination is neither contrary to, nor involves an unreasonable application of, clearly established federal law.   Furthermore, the court's decision was not based on an unreasonable determination of the facts in light of the evidence presented.

The Court recognizes that Petitioner later submitted an affidavit executed by his alleged alibi witness when seeking leave to appeal in the Michigan Supreme Court.   Likewise, Petitioner has submitted this affidavit to this Court as well.   This Court, however, cannot consider this evidence.   Because the Michigan Supreme Court denied Petitioner leave to appeal, it was the Michigan Court of Appeals that adjudicated Petitioner's claim on the merits.   When adjudicating Petitioner's claim for habeas relief, this Court "is limited to the record that was before the state court that adjudicated the claim on the merits."   *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011).[1]   Accordingly, this claim presents no basis for habeas relief.

### 2.    Failure to Object

During his closing argument, the prosecutor addressed Petitioner's credibility.  Specifically, regarding Petitioner's testimony that he did not remember fleeing from the police following a traffic stop on October 20, 2015, the prosecutor stated that Petitioner was "lying."   (ECF No. 14-6, Trial Transcript, PageID.738).   Regarding

---

[1] While there exist certain limited exceptions to this general rule, *see* 28 U.S.C. § 2254(e)(2), Petitioner has neither asserted nor demonstrated that any such exception is presently applicable.

Petitioner's testimony that he and his brother, Timothy, are so similar in appearance that they are mistaken for each other, the prosecutor characterized Petitioner as "lying."   (*Id.*, PageID.768).   Petitioner argues that his attorney was deficient for failing to object to these comments.

The Court, however, discerns nothing improper about the prosecutor's comments.   The prosecutor did not engage in improper vouching by implying that he possessed "special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony."   *Wogenstahl v. Mitchell*, 668 F.3d 307, 328 (6th Cir. 2012).   Instead, the prosecutor merely argued reasonable inferences from the evidence presented which he is permitted to do.   *See, e.g., Landis v. Galarneau*, 2012 WL 2044406 at *4 (6th Cir., June 7, 2012) (quoting *United States v. Collins*, 78 F.3d 1021, 1039-1040 (6th Cir. 1996)).   The prosecutor is likewise permitted to "argue that the jury should arrive at a particular conclusion based upon the record evidence."   *Wogenstahl*, 668 F.3d at 329; *see also*, *United States v. Reliford*, 58 F.3d 247, 250-51 (6th Cir. 1995) (so long as he does not improperly vouch for a witness, it is proper for the prosecutor to review the evidence presented and comment on the strength of the State's case).   Finally, where there is conflicting testimony, "it may be reasonable to infer, and accordingly to argue, that one of the two sides is lying."   *Collins*, 78 F.3d at 1039-1040.

Because any objection to the comments in question would have been futile, counsel's failure to object cannot constitute deficient performance.    Moreover, because the comments in question were not improper, Petitioner cannot demonstrate that he was unfairly prejudiced by his attorney's failure to object thereto.    The Michigan Court of Appeals denied this claim.    *Wade-Bey*, 2018 WL 384601 at *5. This decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law.    Furthermore, the court's decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim presents no basis for habeas relief.

B.    *Cronic* – Presumed Prejudice

As discussed above, when asserting the denial of the right to the effective assistance of counsel, a habeas petitioner generally must establish that he suffered prejudice resulting from his attorney's deficient performance.    The Supreme Court has identified, however, three circumstances in which prejudice in this context is presumed: (1) "complete denial" of counsel at a critical stage of the proceedings; (2) where counsel fails to subject the prosecution's case to "meaningful adversarial testing"; and (3) where, given the circumstances, the likelihood is "small" that "any lawyer" could have provided effective assistance.    *See United States v. Cronic*, 466 U.S. 648, 659-60 (1984); *Bell v. Cone*, 535 U.S. 685, 695-96 (2002).

Citing to *Cronic*, Petitioner asserts that he was "structurally denied" counsel in this matter, which entitles him to relief.   This claim is not properly exhausted, however, as Petitioner did not present such in state court.   This shortcoming notwithstanding, the Court can still deny this claim on the merits.   *See* 28 U.S.C. § 2254(b)(2) ("[a]n application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").   Because this claim lacks merit, the Court opts to address such on the merits for purposes of judicial efficiency.

In support of this claim, Petitioner appears to argue that he satisfies all three of the *Chronic* exceptions identified above.   To the extent that Petitioner claims that he experienced a complete absence of counsel during a critical stage of the proceedings, such is rejected.   The record before the Court supports no such claim and Petitioner has presented no evidence suggesting otherwise.

The Court is likewise not persuaded that Petitioner's trial counsel failed to subject the prosecution's case to meaningful adversarial testing.   To qualify for relief pursuant to this prong, Petitioner must establish that his attorney rendered deficient performance throughout the entire proceeding.   *See, e.g., Phillips v. White*, 851 F.3d 567, 580 (6th Cir. 2017) (citations omitted).   Where counsel merely falls short "at specific points" of the proceeding, *Strickland*, rather than *Cronic*, applies and Petitioner must establish that he suffered prejudice as a result of his attorney's performance.   *Ibid.* ("non-representation, not poor representation, triggers a

26

presumption of prejudice").  While Petitioner, as discussed above, argues that his attorney rendered deficient performance "at specific points," Petitioner has failed to establish that his attorney's performance can reasonably be characterized as "non-representation."

Finally, Petitioner cannot establish that his attorney functioned under circumstances that made it unlikely that "any lawyer" could have provided effective assistance.  This category applies "only 'in limited egregious circumstances,' not simply 'because counsel was belatedly appointed and the court refused to grant additional time to prepare.' "  *United States v. Coleman*, 835 F.3d 606, 612 (6th Cir. 2016) (citation omitted).  When evaluating claims under this category, the Court considers the following factors: (1) the time afforded for investigation and preparation; (2) the experience of counsel; (3) the gravity of the charge; (4) the complexity of possible defenses; and (5) the accessibility of witnesses to counsel. *Ibid.* (citations omitted).

Petitioner argues that he satisfies this standard because his trial attorney, appointed only one day before trial began, failed to undertake any pre-trial investigation. [2]  An assessment of the relevant factors, however, compels the conclusion that Petitioner's prosecution and trial did not present the sort of egregious circumstances where prejudice vis-à-vis counsel's performance can be presumed.

---

[2] While Petitioner has not provided any evidence to support his assertion that his trial attorney was appointed the day before trial, the Court will assume for present purposes that such was the case.

While the fact that counsel was appointed the day before trial might, at first glance, weigh in Petitioner's favor, several things suggest otherwise.   First, while Petitioner's trial counsel may have been appointed the day before trial, it appears that he worked with Petitioner's previous attorney.   Petitioner's previous attorney, Mary Ferrell, and his trial attorney, Brian Hosticka, were both identified in court transcripts as working at 155 E. Apple Avenue, Muskegon, Michigan.   (ECF No. 14-2, PageID.309; ECF No. 14-3, PageID.322).   This is the address for the Muskegon County Public Defender.   *See* Muskegon County Public Defenders, available at https://www.co.muskegon.mi.us/1320/Contact-Us (last visited on April 14, 2020).

In the absence of evidence suggesting otherwise, it is reasonable to assume that when Hosticka was appointed he was provided Ferrell's case file.   The docket sheet indicates that Petitioner's previous attorney requested and received discovery several weeks prior to trial.   (ECF No. 14-1, PageID.305).   In the absence of contrary evidence, it is reasonable to presume that this information would have been in the case file provided to Hosticka.   Furthermore, Hosticka's performance at the outset of trial, when the court addressed various legal matters, demonstrated a very competent command of the facts of Petitioner's case and how such applied to the legal issues being discussed.   (ECF No. 14-3, Trial Transcript, PageID.324-57).   In short, this initial factor does not weigh in Petitioner's favor.

28

Likewise, none of the other factors weigh in Petitioner's favor.   While the Court does not diminish the gravity of any conviction or sentence, Petitioner's trial involved a relatively minor property crime that largely turned on a single issue, namely the identification of Petitioner as the man Jennifer Vanderlip encountered at her home on the morning in question.   Petitioner has presented no evidence to suggest that Hosticka lacked the experience to adequately defend such a charge. Finally, there is no evidence indicating that Petitioner's counsel did not have access to relevant witnesses.[3]   In sum, this claim is without merit and is, therefore, rejected.

## IV.    Calculation of Petitioner's Sentence

Finally, Petitioner argues that he is entitled to be re-sentenced "according to properly scored guidelines" and "with proper consideration of mitigating circumstances."

To the extent that Petitioner asserts that the scoring of the relevant offense variables is inaccurate in violation of Michigan law, such claim is not cognizable.   *See* 28 U.S.C. § 2254(a) (the federal courts can only consider habeas claims alleging "violation of the Constitution, laws, or treaties of the United States"); *Coleman v. Curtin*, 425 Fed. Appx. 483, 484-85 (6th Cir., June 6, 2011) (claims that a state court

---

3 This factor does not concern whether counsel actually interviewed particular witnesses or questioned them at trial.   Instead, this factor is concerned with whether there existed a state-created impediment to counsel's ability to access relevant witnesses.  *See Clark v. Lindsay*, 936 F.3d 467, 470 (6th Cir. 2019) ("[t]o warrant automatic prejudice, a state law or state actor must prevent counsel's presence or limit his representation").

improperly calculated the relevant offense variables is not cognizable in a federal habeas proceeding).

Furthermore, to the extent Petitioner suggests that his sentence is disproportionate and/or violates the principle of proportionality articulated by the Michigan Supreme Court in *People v. Milbourn*, 461 N.W.2d 1 (Mich. 1990), such is without merit.   First, any claim that Petitioner's sentence violates state law is not cognizable in this action.   *See, e.g., Lunsford v. Hofbauer*, 1995 WL 236677 at *2 (6th Cir., April 21, 1995) (citing *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991)) (recognizing that a claim that the sentencing court violated Michigan's principles of proportionality is not cognizable on federal habeas review).

Moreover, the Eighth Amendment to the United States Constitution "does not require strict proportionality between crime and sentence."   *United States v. Layne*, 324 F.3d 464, 473 (6th Cir. 2003) (quoting *Harmelin*, 501 U.S. at 1001).   Instead, the Eighth Amendment simply forbids extreme sentences that are "grossly disproportionate" to the crime committed.   *Layne*, 324 F.3d at 473.   When a court assesses whether a sentence imposed by a state court satisfies the Eighth Amendment's "limited guarantee of proportionality," it must "grant substantial deference to the . . . legislatures . . . in determining the types and limits of punishments for crimes."   *Id.* at 473-74.   Accordingly, "a sentence within the maximum set by statute generally does not constitute cruel and unusual punishment."   *Id.* at 474.   In this case, given Petitioner's status as an habitual felon,

his sentence is in no way "grossly disproportionate" to the crime of which he was convicted.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States.   Accordingly, the undersigned recommends that Wade-Bey's petition for writ of habeas corpus be denied.   The undersigned further recommends that a certificate of appealability be denied.   *See Slack v. McDaniel*, 529 U.S. 473 (2000); *Miller-El*, 537 U.S. at 336.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within the specified time waives the right to appeal the District Court's order.   *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: April 14, 2020                    /s/ Phillip J. Green
                                        PHILLIP J. GREEN
                                        United States Magistrate Judge